**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

---

**TIYON MOORE,**

       **PLAINTIFF,**

**v.**

**RAILWORKS CORPORATION, and**
**RAILWORKS TRACK SERVICES, LLC**

       **DEFENDANT.**

**Case No.**
**JURY DEMANDED**

---

**VERIFIED COMPLAINT FOR VIOLATIONS**
**OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**AND 42 U.S.C. § 1981**

---

**COMES NOW** Plaintiff Tiyon Moore (hereinafter "Plaintiff" or "Mr. Moore"), by and through undersigned counsel, and files this Complaint against Defendants RailWorks Corporation and RailWorks Track Services, LLC (collectively, "RailWorks" or "Defendants") for violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and in support states as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Defendant based on retaliation in violation of Title VII of the Civil Rights Act of 1964 and further brings this action based on retaliation and race discrimination in violation of 42 U.S.C. § 1981.

2. Plaintiff is a former employee of Defendant who alleges that Defendant discriminated against him on the basis of his race and unlawfully retaliated against him for engaging in protected activity.

3. Defendant's actions are in direct violation of Title VII of the Civil Rights Act of 1964, 42

1

U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

4. Plaintiff seeks money damages as permitted by applicable law; attorneys' fees, costs, and expenses incurred in this action.

### PARTIES

5. At all relevant times, Plaintiff, Mr. Tiyon Moore, was an adult resident of St. Clair County, Illinois.

6. Defendant RailWorks Corporation is a for-profit corporation organized under the laws of Delaware and registered to conduct business in Missouri. Its principal office is located at 5 Penn Plz Fl 15, New York, NY 10001-1810.

7. Defendant RailWorks Track Services, LLC is a limited liability company organized under the laws of Indiana and registered to conduct business in Missouri. Its principal office is located at 8485 210th St W, Lakeville, MN 55044-8508.

8. Defendants may be served with process through its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar Street, Jefferson City, MO 65101.

### JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1311 because this case is brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981.

10. Defendants are registered and subject to service of process in Missouri, employ Missouri citizens, maintain an office, and do business in the state of Missouri. Therefore, this Court has personal jurisdiction over Defendants.

11. Venue for this action is proper in this Court and County pursuant to 28 U.S.C. § 1391. The facts and circumstances which give rise to the causes of action contained within this Complaint occurred in St. Louis County, Missouri, and within this Judicial District.

### FACTUAL ALLEGATIONS

12. Mr. Moore is African American.

13. Mr. Moore was hired by RailWorks on or about August 28, 2023 as a Laborer at RailWorks' facility in Hazelwood, Missouri, earning $24.60 per hour.

14. In the early part of his employment, Mr. Moore worked as part of a crew of five individuals on most days; the crew included Mr. Scott Brooks, the foreman and supervisor; Mr. Nathaniel (last name unknown), the operations manager; and two other laborers, Mr. Blaze Hero and Mr. Issac Phelps.

15. In early October 2023, Mr. Marcus Culp acted as the foreman for the crew.

16. In October 2023, Mr. Culp subjected Mr. Moore to numerous offensive and harassing questions related to his race and sex.

17. For instance, Mr. Culp constantly questioned Mr. Moore regarding whether he watched porn generally and whether he watched specific categories of porn.

18. Moreover, Mr. Culp asked Mr. Moore why he disliked dogs and made comments about "running from the police," both of which are notably inappropriate, offensive, and clearly based on racially derogatory stereotypes against African Americans.

19. Because of these comments, Mr. Moore felt uncomfortable around Mr. Culp and decided to report these comments to Mr. Tim Scheller, the area manager.

20. Mr. Scheller offered to provide Mr. Moore the telephone number for the Alert Line such that he could "anonymously" lodge complaints of harassment, discrimination, retaliation and or any other issue, but this claim is false, as his reports of Mr. Culp were clearly not held anonymous.

21. After Mr. Culp issued an apology to the crew for "anything he said that offended anyone," he then pulled Mr. Moore aside afterward to personally apologize.

3

22. Mr. Culp apologized to Mr. Moore for his comments; however, the only reason for Mr. Culp to personally apologize to Mr. Moore would be due to him being made aware that Mr. Moore was the individual that made the complaint to the Alert Line.

23. After Mr. Moore lodged his report and complaint regarding Mr. Culp's harassing comments and behavior, RailWorks began its retaliatory conduct against Mr. Moore.

24. In or around November 2023, Mr. Moore was moved to a completely separate crew, with Mr. Reginald Johnson, Mr. Culp's friend, as the foreman.

25. Around the same time period, Mr. Moore's hours were greatly reduced from 40 hours per week to 22 hours per week.

26. To compare, other laborers on the crew worked between 38-48 hours per week.

27. Mr. Johnson created numerous difficulties for Mr. Moore while under his supervision

28. For instance, Mr. Johnson did not communicate to Mr. Moore his exact duties on the jobsite, leaving Mr. Moore unable to effectively perform his work; and, on one occasion on November 3, 2023, Mr. Johnson did not inform Mr. Moore of the specific jobsite for the day and did not pick up Mr. Moore for transportation, forcing Mr. Moore to both independently find the jobsite and travel to the site by walking.

29. Mr. Johnson further prevented Mr. Moore from working on at least one occasion under the guise that only two laborers were needed.

30. Mr. Johnson's justifications listed to Mr. Scheller for this decision, including Mr. Moore having a poor work ethic and being a distraction for the crew, are without factual basis.

31. Upon information and belief, Mr. Culp informed others of Mr. Moore's initial complaint, leading others to have unfounded concerns of being subject of future complaints by Mr. Moore to Human Resources.

32. Mr. Harry (last name unknown), the performance evaluator for RailWorks, stated that Mr.

4

Moore was "the best new worker" for RailWorks on or about November 13, 2023.

33. At RailWorks, employees were required to stay at hotel rooms near the jobsite.

34. On numerous occasions, Mr. Moore's room flooded, inhibiting his ability to prepare for work the following morning.

35. Mr. Moore reported the condition of his room to RailWorks, but the Company did nothing for him.

36. On both November 7 and November 27, 2023, Mr. Moore issued complaints to RailWorks regarding Mr. Johnson's retaliatory conduct against him for his initial complaint regarding Mr. Culp's inappropriate and harassing behavior.

37. The very next day of the latter complaint, November 28, 2023, RailWorks fired Mr. Moore.

38. Mr. Moore, along with another African American laborer, were the only laborers terminated by RailWorks at the Hazelwood, Missouri facility at this time.

39. RailWorks claims that Mr. Moore's termination was due to a reduction in force; however, soon after terminating Mr. Moore, RailWorks advertised that it was hiring laborers.

40. Mr. Moore was informed by RailWorks at the time of his termination that RailWorks would contact him regarding a position the following spring; however, RailWorks never contacted Mr. Moore.

## COUNT I - UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII

41. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-40 as if fully set forth herein.

42. Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII. See 42 U.S.C. § 2000e-3(a). The opposition clause of Title VII makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter." § 2000e-

5

3(a)."

43. To establish retaliation under either Title VII or § 1981, a plaintiff must prove (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for-cause of the adverse employment action. *See Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

44. On numerous occasions, Mr. Moore exercised his rights by filing complaints against supervisors at RailWorks for both harassing and discriminatory remarks and retaliation for his original complaint.

45. Mr. Moore further suffered multiple adverse employment actions, including a significant reduction in hours and his eventual termination.

46. Mr. Culp was clearly aware that Mr. Moore was the individual who filed a complaint regarding his behavior.

47. Moreover, Mr. Moore suddenly developed a reputation for being one to file complaints within the Company.

48. Mr. Johnson, a friend of Mr. Culp, further acted in retaliation by reducing his hours and hindering his ability to effectively perform his work.

49. Finally, Mr. Moore was terminated only one day after his final complaint to RailWorks; therefore, a causal connection exists between

50. As such, Defendants unlawfully retaliated against Mr. Moore in violation of Title VII.

## COUNT II - UNLAWFUL RETALIATION IN VIOLATION OF SECTION 1981

51. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-50 as if fully set forth herein.

52. The Eighth Circuit applies "the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981." *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir.

2009); *see also Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013) (applying same standard to race-based retaliation claims).

53. To establish retaliation under either Title VII or § 1981, a plaintiff must prove (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for-cause of the adverse employment action. *See Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

54. On numerous occasions, Mr. Moore exercised his rights by filing complaints against supervisors at RailWorks for both harassing and discriminatory remarks and retaliation for his original complaint.

55. Mr. Moore further suffered multiple adverse employment actions, including a significant reduction in hours and his eventual termination.

56. Mr. Culp was clearly aware that Mr. Moore was the individual who filed a complaint regarding his behavior.

57. Moreover, Mr. Moore suddenly developed a reputation for being one to file complaints within the Company.

58. Mr. Johnson, a friend of Mr. Culp, further acted in retaliation by reducing his hours and hindering his ability to effectively perform his work.

59. Finally, Mr. Moore was terminated only one day after his final complaint to RailWorks; therefore, a causal connection exists between

60. As such, Defendants unlawfully retaliated against Mr. Moore in violation of Section 1981.

## COUNT III - RACE AND COLOR DISCRIMINATION IN VIOLATION OF SECTION 1981

61. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-60 as if fully set forth herein.

62. The Eighth Circuit applies "the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981." *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009); *see also Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013) (applying same standard to race-based retaliation claims).

63. As such, Mr. Moore must show that (1) he was a member of a protected group; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees, who are not members of the protected group, were treated differently. *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

64. Here, Mr. Moore is a black man and thus a member of a protected class.

65. Mr. Moore was a well-performing employee for RailWorks and was even noted as "the best new worker" for RailWorks shortly before his termination.

66. Mr. Moore further suffered multiple adverse employment actions, including a significant reduction in hours and his eventual termination.

67. Mr. Moore's hours were cut to 22 hours per week during his employment; to compare, other laborers on the crew worked between 38-48 hours per week.

68. On at least occasion, Mr. Johnson prevented Mr. Moore from working altogether.

69. Moreover, at the time of his termination, only African American laborers were terminated as part of RailWorks' purported reduction in force; as such, similarly situated outside the protected class received preferential treatment to Mr. Moore.

70. Soon after this "reduction in force." RailWorks advertised that it was hiring new employees at the facility.

71. Moreover, Mr. Moore was given no opportunity for rehire despite RailWorks claiming that it would give him such an opportunity.

72. As such, RailWorks unlawfully discriminated against Mr. Moore on the basis of his color

8

and race in violation of Section 1981.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Tiyon Moore prays for relief as follows:

A. Declare that the acts and practices complained of herein are in violation of Title VII, and Section 1981;

B. Order Defendants to make Plaintiff whole by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

C. Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, in amounts to be determined at trial;

E. Order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Order Defendants to pay Plaintiff punitive damages for its malicious and reckless conduct described herein, in amounts to be determined at trial;

G. Award Plaintiff his reasonable attorney's fees and costs of this action; and,

H. Grant such further relief as the Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY TO TRY ALL ISSUES SO TRIABLE**

Dated: August 10, 2026

Respectfully Submitted,

_s/ Alan G. Crone_
Alan G. Crone
Missouri Bar No. 73285
BARRETT & FARAHANY
2921 Piedmont Rd NE, Suite A,
Atlanta, GA 30305
901-737-7740 (voice)
acrone@justiceatwork.com

_Attorney for Plaintiff_

**DECLARATION & VERIFICATION**

I, Tiyon Moore, verify and declare that the facts stated in the foregoing Verified Complaint for violations of Title VII and Section 1981 are true to the best of my knowledge and belief, and that the Complaint was not made out of levity or by collusion with Defendant but in sincerity and truth for the causes mentioned in the Complaint.

Tiyon Moore (Aug 10, 2026 14:34:26 CDT)

**Tiyon Moore**

08/10/2026

Date

# Complaint - Tiyon Moore

Final Audit Report                                                    2026-08-10

| | |
|---|---|
| Created: | 2026-08-10 |
| By: | Rose Anne Manarin (roseanne@justiceatwork.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAUIX2njXKhSZdHQi2Ry7V3OaQIM1-DMCG |

## "Complaint - Tiyon Moore" History

Document created by Rose Anne Manarin (roseanne@justiceatwork.com)
2026-08-10 - 4:15:51 PM GMT

Document emailed to tiyonmoore15@gmail.com for signature
2026-08-10 - 4:16:43 PM GMT

Email viewed by tiyonmoore15@gmail.com
2026-08-10 - 7:33:48 PM GMT

Signer tiyonmoore15@gmail.com entered name at signing as Tiyon Moore
2026-08-10 - 7:34:24 PM GMT

Document e-signed by Tiyon Moore (tiyonmoore15@gmail.com)
Signature Date: 2026-08-10 - 7:34:26 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

Agreement completed.
2026-08-10 - 7:34:26 PM GMT



Powered by
**Adobe**
**Acrobat Sign**